VICKER and wife, Plaintiffs, vs. O'CONNOR and wife, Defendants. [Two appeals.]

*April 3—April 30, 1935.*

For the plaintiffs there were briefs by *A. L. Smongeski* and *Geo. H. Martens,* both of Stevens Point, and oral argument by *Mr. Smongeski.*

For the defendants there were briefs by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *William E. Fisher.*

WICKHEM, J. Two questions are presented upon this appeal : First, whether the facts and circumstances were such as to give rise to a right of rescission in plaintiff; second, whether, if so, plaintiff ratified the transaction or waived his right to rescind. This requires an examination of the facts in some detail. Since, after a careful examination of the record, we are satisfied that the findings of the trial court are supported by the evidence, the material facts may be stated as found by the court.

On August 28, 1933, defendant owned and operated a stone quarry in the city of Stevens Point. Plaintiff, for a number of years, had been a contractor. On the above date defendant sold the stone quarry to plaintiff. In the course of negotiations for this sale, defendant pointed out the boundaries of the land in question, represented that he had acquired title to all of these lands by warranty deed, that the same was of record, and that he had an abstract showing such title. Defendant had purchased the property in 1893, and received a warranty deed which, however, did not include or convey some three and three-tenths acres of this property. This defect was unknown to defendant. Prior to the sale to plaintiff, defendant, in operating the quarry, had extended his

excavations into St. Louis avenue. This street adjoined the quarry upon the east, and was largely unimproved; the traveled portion being a single-track road. Neither plaintiff nor defendant knew that the excavations intruded upon the highway. Plaintiff promptly caused a survey of the property to be made, and within ten days learned of the discrepancy in the deed and of the excavations within the street lines of St. Louis avenue. He immediately brought these matters to the attention of defendant, who agreed to perfect the title and proceeded promptly in that direction. There were also negotiations concerning the filling up of excavations made in St. Louis avenue, but these never came to a definite conclusion. On November 9, 1933, plaintiff gave notice of rescission. Prior to that time defendant had tendered a correction warranty deed containing the proper description, and had filed an affidavit in the office of the register of deeds to the effect that he had been in open, adverse, and continuous possession of all the quarry property since February 11, 1893, and that the omission of the three and three-tenths acres was due to an error of the scrivener.

In determining that plaintiff initially had a right to rescind because of the fact that defendant neither had nor conveyed a good record title to the premises in question, the court relied principally upon *Zunker v. Kuehn,* 113 Wis. 421, 88 N. W. 605. In that case plaintiff owned certain lands in Waukesha county and the defendants owned a tract in Milwaukee. An exchange was negotiated, during the course of which the defendant Martin Kuehn pointed out his property as having a street frontage of one hundred and ten feet. On the basis of this the exchange was agreed upon, each party to give the other a good record title to the land owned by him, and deeds were executed. It turned out that the defendants' deed covered a strip only ninety-nine feet wide, and upon discovery plaintiff elected to rescind and brought an action for rescission and cancellation. The trial court found

that the defendants had no title of record except to the ninety-nine feet; that both parties supposed that they had title to the whole one hundred and ten feet inclosed by fences. The evidence showed that defendant Martin Kuehn and his father had been in exclusive possession of the one hundred and ten feet for thirty or thirty-five years, and had inclosed the whole tract with a substantial fence. The trial court declined to find that the defendants had title by adverse possession, but found that they had no record title to the eleven-foot strip, and that the title conveyed was not what they had agreed to give. Rescission was granted upon the ground of mutual mistake. Judgment was affirmed upon appeal to this court. The court held that, assuming the evidence to show adverse possession for over twenty years, this was not a title of record and depended upon questions of fact which could only be resolved by evidence; that plaintiff was entitled to a record title; that, since he did not get such a title, he could rescind.

We see no escape from the conclusion that this phase of the controversy is governed by the *Zunker Case*. Defendant did not have or convey a record title to the three and three-tenths acres. Leaving aside entirely the matter of the excavations ·in the street, the trial court was warranted in its conclusion that plaintiff could rescind. In view of this conclusion, we deem it unnecessary to consider whether these excavations constitute an added ground for rescission. See also *Stelting v. Bank of Sparta,* 136 Wis. 369, 117 N. W. 798.

The next question is whether by his conduct plaintiff waived this right. The rule relied upon by plaintiff is thus stated in *Booth v. Ryan,* 31 Wis. 45 :

". . . A party claiming to rescind a contract on the ground of fraud must do so promptly on discovery of the facts, and that if he delays or takes any further steps in the execution of the contract, or does any act recognizing its validity, after discovery, he loses all right to this particular form of relief."

In *Mueller v. Michels,* 184 Wis. 324, 197 N. W. 201, 204, 199 N. W. 380, the following statement from 2 Black, Rescission and Cancellation, § 536, is quoted with approval:

"The true doctrine is that, after discovering the facts justifying rescission, the party is entitled to a reasonable time in which to decide upon the course he will take. But this does not mean that he will be indulged in a vacillating or hesitating course of conduct, but that he must act with such a measure of promptness as can fairly be called 'reasonable' with reference to all the circumstances of the particular case. Particularly he must, if possible, avoid such a delay as will make the ensuing rescission injurious to the other party or to the intervening interests of third persons. He must use reasonable diligence in ascertaining the facts which may entitle him to rescind, and must act so soon after the discovery of them as that the opposite party will not be unnecessarily prejudiced by the delay."

See also *Churchill v. Price,* 44 Wis. 540; *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246; *McLennan v. Prentice,* 85 Wis. 427, 55 N. W. 764; *Chandler v. Gault,* 181 Wis. 5, 194 N. W. 33; *Pfeiffer v. Marshall,* 136 Wis. 51, 116 N. W. 871; *Rasmusen v. New York Life Ins. Co.* 91 Wis. 81, 64 N. W. 301. So far as the time element is concerned, it cannot be said that plaintiff's delay was sufficient to bar his right to rescind. There was no great lapse of time even between the survey and the election to rescind. This delay was in response to defendant's assurance that he had a record title and that the defects would be cured.

The most serious question concerns the fact that plaintiff, after the survey, continued to work the quarry until such time as negotiations between defendant and himself failed. Does this conduct evidence such a ratification as will constitute a waiver of the right to rescind? We think not. Even if plaintiff, upon discovery of such a mistake as was here involved, must make the same immediate and unequivocal

election as would be required in cases of actual fraud, there is a material difference between this case and one involving fraud. The facts which the survey disclosed did not constitute such a discovery as, standing alone, would warrant rescission. The survey simply disclosed the fact that his deed did not convey title to the three and three-tenths acres. It did not determine, nor was defendant willing to concede, that he had no record title to this property. Upon the assurance of defendant that he had good title and that the whole matter would be cleared up, plaintiff postponed for a time his decision upon the matter. During the period following the survey and prior to rescission, plaintiff cannot be said to have ascertained the existence or full scope of the defect, nor can his conduct in responding to defendant's request, by continuing his possession of the land, be treated as an unequivocal act of ratification. We conclude that there was no waiver or ratification by plaintiff.

The question remains, however, whether defendant, after the survey and prior to the notice of rescission, did not so perfect his title as to completely comply with the representations made before sale. In view of the representations with respect to the title and the doctrine of the *Zunker Case,* the filing of an affidavit of adverse possession would not be sufficient. The question, then, is whether, aside from the filing of this affidavit, the title was perfected. This requires a further consideration of the facts.

In 1873, all of the property here involved, including the three and three-tenths acres, was owned by one William Avery. In that year William Avery sold to Jared Avery all of the property described by the deed from defendant to plaintiff, and all of the three and three-tenths acres, except for a strip twenty-five feet wide and lying just to the northwest of the property conveyed by plaintiff's deed. Defendant sought to perfect his record title by getting conveyances from

the widow and daughters of Jared Avery. These attempts have been designated by the trial court as amounting practically to a clearing up of the record title, but as falling short of this objective. The respects in which defendant has failed are two: First, there is no showing whether the two daughters of Jared Avery constituted all of Jared Avery's children, and therefore no showing that they are his only heirs; and, second, the conveyance from William Avery to Jared Avery failed to convey a strip twenty-five feet wide separating the balance of the three acres from the property conveyed by plaintiff's deed. The title to this strip, so far as the record discloses, was never conveyed by William Avery. In view of the representations, we think the trial court correctly concluded that defendant had not perfected a record title to this portion of the three and three-tenths acres, and that plaintiff was entitled to rescind.

The court denied plaintiff the right to recover as damages losses sustained by him as the result of operating the quarry. Plaintiff appeals from this portion of the judgment. There is no merit in this appeal. Plaintiff's election to rescind and his action to cancel the deed "put an end to the promise on which he must sue," and he can only seek the return or restitution of that which he has given. *E. L. Husting Co. v. Coca Cola Co.* 205 Wis. 356, 373, 237 N. W. 85, 238 N. W. 626; 3 Williston, Contracts, pp. 2589–2609.

*By the Court.*—Judgment affirmed upon each appeal. No costs to be taxed; appellants to pay clerk's fees.