Man Ngok TAM, and Yee Ming Tamlee, Plaintiffs,

Harry J. O'LEARY, Assignee of the Plaintiffs, Plaintiff-Appellant,

v.

Hoi Hong K. LUK, and Sino-American, Inc., Defendants-Respondents.†

Court of Appeals

*No. 89-0576. Submitted on briefs October 12, 1989.—Decided January 4, 1990.*

(Also reported in 453 N.W.2d 158.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *David J. O'Leary* of *Suran & Suran* of Milwaukee.

For the defendants-respondents the cause was submitted on the brief of *William S. Wood* of *Nowlan & Mouat* of Janesville.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. Man Ngok Tam and Yee Ming Tamlee, and their assignee, Harry J. O'Leary (collec-

tively, "Tam"), the plaintiffs in this real estate foreclosure action, appeal from a judgment granting the counterclaim of the defendants, Hoi Hong K. Luk and Sino-American, Inc. (collectively, "Luk") for rescission of the underlying contract.[1]

The dispositive issues are: (1) whether, in order to succeed on a claim for rescission of a contract for the sale of real estate on grounds that the "free and clear of all encumbrances" warranty was breached, there must be a showing of actual damages; and (2) if so, whether Luk's proof satisfied this requirement. Tam also contends that he is entitled to "damages" resulting from Luk's abandonment of the property in the sum of $11,097.09.

We conclude that Luk was required to prove some damage or detriment in order to rescind for breach of the warranty under the facts of this case and, further, that he failed to do so. We therefore reverse on that issue and remand with directions to the court to enter judgment dismissing Luk's rescission counterclaim and to take such further action as may be necessary to resolve any remaining issues in Tam's foreclosure action. We also conclude that Tam is entitled to such portion of his claimed "damages" as are provided in the trial court's interlocutory judgment dated October 17, 1988, but that the remainder of his argument on the issue must be disregarded for his failure to provide any reference to evidence in the record supporting his contentions. In light of our rulings, Tam's other challenges to Luk's right to rescind the contract need not be considered.

The facts are not in serious dispute. Tam purchased the restaurant in 1983 with the help of O'Leary, a Janes-

---

[1]The trial court had entered an interlocutory judgment awarding possession of the property to Tam and the case went to trial on issues raised by Luk's counterclaim for rescission, and a request by Tam for additional "damages."

ville attorney. As part of the purchase, Tam gave a note and mortgage to the seller, Sam Moccero, which, among other things, provided that if the property was sold without Moccero's written consent, he had the option to declare the entire balance immediately due and payable.

In 1987, Tam began negotiating for sale of the restaurant to Luk. On Tam's behalf, O'Leary wrote to Luk providing information on the property and stating: "I can further certify that title to the [property] is in [Tam] per the attached copies of a Warranty Deed and Bill of Sale, and subject to a first mortgage to Sam Moccero, a copy of which is also enclosed."

Shortly thereafter, Tam and Luk went to O'Leary's office to ask him to prepare the necessary documents for the sale. On June 29, 1987, the two men met again with O'Leary and signed an agreement for Luk's purchase of the assets of the corporation (Sino-American) that Tam had formed to own and operate the restaurant. The agreement stated that the sale was to be "free from all liabilities and encumbrances," and that Tam "warrant[ed] and represent[ed]" that he had "good merchantable title" to the property. The agreement also stated that, at closing, Tam would deliver a warranty deed to Luk transferring title "free and clear of all liens and encumbrances."

The financial terms of the agreement were that Luk would pay $20,000 down on the total purchase price of $145,000 and would execute a note and mortgage back to Tam for the balance. In addition, Luk gave Tam a check, postdated to February 1, 1988, for $25,000. The closing documents included Luk's note and mortgage and Tam's printed-form warranty deed to Luk in which, after the statement that Tam "warrants that the title is good, indefeasible in fee simple and free and clear of encumbrances except," appears the word "None."

Tam, however, did not satisfy the Moccero mortgage by June 29, 1987, the closing date. According to O'Leary, he decided not to tell Moccero about the sale or attempt to satisfy the mortgage at the time because he was experiencing "language problem[s] trying to explain the[ ] document[s] to the parties" and also did not want to "disturb" Moccero, who O'Leary described as "getting up in years," with "the arrangements of this sale." O'Leary testified that he decided not to tell Luk that the mortgage was not being satisfied because he believed Tam would hold Luk harmless on the debt. He stated that because he "figured eventually [Tam] would pay it off," he did not feel it was "necessary" to inform Luk of its existence. O'Leary also stated that he did not give Luk the abstract—which also would have verified the existence of the mortgage—for the same reasons, stating: "I didn't feel it was important."

At the time of the sale, the balance on the Moccero mortgage was approximately $65,000 and Tam continued to make the required monthly payments directly to Moccero. A few months later, Luk and Moccero met and in the ensuing conversation Moccero first learned of Tam's sale of the restaurant to Luk, and Luk—who knew of Moccero's mortgage but believed it had been satisfied at the time of closing—first learned that the mortgage had not been satisfied. Moccero's attorney soon contacted O'Leary, demanding payment of the mortgage balance and threatening foreclosure in default of payment. Tam had continued his payments to Moccero after the closing and was current.

At some unstated point "in this time frame," Luk, who had by that time made the first two payments on the mortgage to Tam, stopped paying. He continued in possession of the restaurant for several months, how-

ever, and when he eventually abandoned it, he left it in a state of disrepair.

Tam then commenced this foreclosure action and, with O'Leary's financial assistance, satisfied the Moccero mortgage. The trial court, after directing return of the property to Tam, allowed Luk's counterclaim and entered judgment rescinding the contract of sale. Other facts will be discussed in the body of the opinion.

■

Tam argues first that the trial court erred in rescinding the sale for breach of the deed's "no-encumbrance" warranty in the absence of proof that Luk had suffered some damage or detriment as a result. It is a question of law which we decide independently, without deference to the trial court's ruling. *Wick v. Waterman,* 143 Wis. 2d 676, 678, 421 N.W.2d 872, 873 (Ct. App. 1988). The precise question does not appear to have been decided in Wisconsin, nor is there much contemporary authority on the subject.

In *Pecuniary damage as essential to rescission of contract for purchase of real or personal property,* 106 A.L.R. 125, 156 (1937), the author states: "It is ordinarily held that at least in the absence of intentional fraud, a purchaser of property has no right to rescind because of . . . the existence of an encumbrance, where . . . the encumbrance [is] discharged before the purchaser asserts the right to rescind . . . or, as is sometimes held, before judgment is entered in the action wherein the right of rescission is sought to be enforced . . . and where no actual damage of any kind appears to have resulted to the purchaser . . .."

The cases discussed in the annotation indicate that there must be something more than mere violation of the "no-encumbrance" warranty, although, as Luk suggests, proof of pecuniary or out-of-pocket loss is not necessa-

rily required. In two early Wisconsin cases, for example, rescission was allowed without discussion of pecuniary damage where the property conveyed was something less, or different, from that warranted by the seller. *See Vicker v. O'Connor,* 218 Wis. 216, 220, 260 N.W. 426, 428 (1935), and *Zunker v. Kuehn,* 113 Wis. 421, 425, 88 N.W. 605, 606 (1902), where the purchasers proved that the sellers, having warranted good title to specific parcels of land, conveyed something less. In each case, the court considered that fact to be sufficient in and of itself to support rescission. It is understandable that neither case discusses the purchasers' damages to any degree, for they were obvious as a matter of law. Each received substantially less—or at the very least, substantially different—property than he or she had bargained and paid for.

While we agree that a showing of pecuniary loss is not necessary to establish a claim for rescission based on a seller's misrepresentation of the status of the subject property, we believe there must be some showing of prejudice, damage or detriment to the buyer. In cases like *Vicker* and *Zunker,* where the acreage conveyed was significantly less than warranted—or, as in *Hansen v. Allen,* 117 Wis. 61, 62, 93 N.W. 805 (1903), where the property's "identity, condition [or] situation" was not as the seller had represented[2]—such a showing is made as a matter of law. However, where, as here, the breach or the "fraud" is in the seller's failure to satisfy a mortgage at closing—and if the encumbrance is removed at the request or suit of the purchaser without any showing of prejudice, damage or detriment—it makes little sense to

___

[2]In *Hansen,* the parcel as represented to the purchaser was "timbered land with a stream of water upon it," but the deed conveyed other lands altogether—presumably lands with neither timber nor stream. *Id.,* 117 Wis. at 66, 93 N.W. at 806.

allow rescission. "The proposition that a purchaser cannot rescind unless the thing of which he [or she] claims is of practical consequence from some point of view is not difficult to maintain." Annotation, 106 A.L.R. at 129.

The trial court, assuming without deciding that Tam's failure to disclose the continued existence of the Moccero mortgage was "innocent of actual fraud," equated his (and O'Leary's) conduct with that of a seller making an intentional misrepresentation to a purchaser. The general rule in fraud or misrepresentation cases, of course, is that "[a]ctual damage is an essential element [of the] cause of action . . .." *D.R.W. Corporation v. Cordes*, 65 Wis. 2d 303, 309, 222 N.W.2d 671, 675 (1974) (footnote omitted). We believe the same requirement should exist where the "defrauded" party seeks rescission based on a false warranty of an encumbered title. Whether the misrepresentation was intentional or merely negligent, if the encumbrance is removed before any detriment inures to the purchaser—where the breach is both harmless and corrected in a timely manner—we see little reason to allow the purchaser to end the contract.

Luk contends that he suffered "substantial damages" as a result of the misrepresentation. Offering no reference to the record to support the assertion, he states that, "because of the various liens against the property"—which he neither identifies nor describes—he was unable to refinance the property. His brief's statement of facts does contain a reference to several lines in the record where he stated that he talked to local banks about financing "to run the restaurant," and that he was refused after the bank checked his record and he told the banker that "the property is in problem, in trouble." The testimony is not specific as to time or to the type of

"trouble" referred to, however, and it is completely silent on what effect, if any, the bank's refusal—whenever it occurred—may have had upon him.[3] The trial court made no findings that Luk was damaged by the misrepresentation—substantially or otherwise[4]—and we find

[3]The testimony, in its entirety, is as follows. At the conclusion of his direct examination, after discussing the entire transaction and its aftermath in roughly chronological order, he was asked:

Q: Okay. Leave it right there, please. Did you talk to a banker about financing for your operation to run the restaurant?

A: Yes, I asked Valley Bank and Rock County Bank.

Q. Were you able to borrow the money?

A: No, the Valley Bank, no, they don't consider to. And the Rock Bank, the officer I asked him because the remodeling not finish, I cannot open, roof still leaking. I need money urgently. I asked him can I borrow money and they say no, probably no, not on the property no. He check my record. I borrow five thousand maybe on the equipment or by my personal. Loan me five thousand, just loan me five thousand.

Q: Now, did the banker ask you if the property was free and clear of all liens?

A: They ask but I told him now I got a problem, you know, and the former owner complain to me now. The property, I told them the property is in problem, in trouble.

Q: Did he refuse the loan?

A: Yeah, right.

MR. WOOD: That's all the questions I have of Mr. Luk.

[4]The only "damages" discussed in the trial court's memorandum decision and findings of fact and conclusions of law were the payments made by Luk on the contract (which, given the court's determination that he was entitled to rescind, were ordered returned to him) and certain other claims for sums due pursuant to an oral contract, which the trial court rejected. As to the first, we have held that Luk was not entitled to rescind, and we were

inadequate support in the record for his assertion that he was.[5]

As indicated, Tam contends that the trial court erred in "failing to award [him] damages . . . as a result of Luk's abandonment of the property." He lists his damages as those caused by bursting water pipes and unpaid insurance premiums and real and personal prop-

not asked to rule on the effect such a holding has on those "damages." As for the second, the court's ruling on this issue was not challenged on appeal.

[5]Luk also contends that he was damaged by the existence of the Moccero mortgage because it resulted in institution of the foreclosure proceedings. He asserts that "[w]hen he realized that the mortgage was in effect and that Moccero could foreclose the mortgage immediately, he stopped making the payments because he knew his purchase from the appellants was in jeopardy." Here, too, the statement is unaccompanied by any reference to the record.

The only possible reference to any testimony to support such an assertion is, again, not accompanying the argument but in the statement of facts. And the only testimony—that of O'Leary—purporting to "connect" Luk's stopping payment on the contract with his discovery of the Moccero mortgage is the single statement that the two events occurred "in the same time frame." We consider that remark to be inadequate support for the factual basis underlying Luk's argument, and we decline to embark on our own search of the record, unguided by references and citations to specific testimony, to look for other evidence to support it. Section (Rule) 809.19(1)(e), Stats., requires parties' briefs to contain "citations to the . . . parts of the record relied on" and we have held that where a party fails to comply with the rule, "this court will refuse to consider such an argument . . .." *State v. Shaffer,* 96 Wis. 2d 531, 546, 292 N.W.2d 370, 378 (Ct. App. 1980). "[I]t is not the duty of this court to sift and glean the record *in extenso* to find facts which will support an [argument]." *Keplin v. Hardware Mut. Casualty Co.,* 24 Wis. 2d 319, 324, 129 N.W.2d 321, 323 (1964).

erty taxes, and he asserts that "the trial court's finding that no damages were caused to the premises by Luk's default and abandonment is clearly erroneous."

First, we see no such "finding" in either the court's memorandum decision or its findings of fact. Second, Tam fails to assert any monetary "damage" relating to burst water pipes. His calculation of the "damages" he seeks to have us confirm is simply this: he takes the amounts included in the court's interlocutory judgment for interest and expenses and adds to those sums figures claimed to represent taxes due and interest accruing from the time of the interlocutory judgment to confirmation of the sheriff's sale of the property.

With the exception of the sums provided for in the interlocutory judgment, Tam has failed to provide us with any citation to the record to support his other damage claims—amounts for taxes and insurance and additional interest. As we have noted with respect to several of Luk's factual assertions, we do not consider such unsupported arguments.[6] As a result, we do not reach these issues.

■

We hold, therefore, that the trial court erred in granting judgment on Luk's counterclaim for rescission. With respect to Tam's "damage" arguments, we can do no more on these briefs and on this record than to confirm the amounts provided in the trial court's interlocutory judgment. On remand the trial court may, of course, ascertain any additional amounts that may be due Tam as a result of our rulings.

We conclude, therefore, that the trial court erred in allowing Luk to rescind the contract and remand for further proceedings consistent with this opinion.

---

[6]*See* note 5.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.