State of Wisconsin, Plaintiff-Respondent,
v.
Nicholas D. Kasten, Defendant-Appellant.
No. 04-1773-CR.
Court of Appeals of Wisconsin.
Opinion Filed: March 22, 2005.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Nicholas Kasten appeals a judgment convicting him of second-degree sexual assault of a child and an order denying postconviction relief. Kasten argues that defense counsel was ineffective for failing to ensure that Kasten understood the nature and consequences of his no contest plea. Because the record supports the circuit court's determination that Kasten received effective assistance of counsel and understood the nature and consequences of his plea, we affirm the judgment and order.
¶2 Kasten, age eighteen, was charged with one count of sexual assault of a child under the age of thirteen, contrary to WIS. STAT. § 948.02(1).[1] At the preliminary hearing, the victim's father testified that Kasten, a friend of his son, accompanied their family to their cottage, where they stayed overnight. The following evening, the victim, a five year old, told her father that Kasten "tickled me down there and it hurt" and "he poked his finger down there." The victim pointed to her vaginal area.
¶3 A sheriff's investigator testified that he questioned Kasten, who stated that the girl was jumping on him while he was on the couch and his finger could have touched the girl's vaginal area, and could have gone in "an inch, or maybe a centimeter." He claimed the touching was through clothing and accidental.
¶4 Following the preliminary hearing, the trial court found probable cause. Kasten entered a not guilty plea and requested a jury trial. Kasten and his attorney later accepted the plea agreement offered by the State. Kasten pled no contest to a reduced charge of sexual contact of a person who has not attained the age of sixteen years, contrary to WIS. STAT. § 948.02(2). As part of the plea bargain, the prosecutor agreed to not exceed the presentence report's sentencing recommendation and, if it recommended probation, the prosecutor would also recommend probation with the condition of up to one year in jail.
¶5 At the plea hearing, Kasten stated that he had no questions regarding the prosecutor's recitation of the plea agreement. The court described the charge and penalties and asked:
The Court: Do you understand the charge?
[Kasten]: Yes, Your Honor.
The Court: Do you understand the penalties you face?
[Kasten]: Yes, Your Honor.
The Court: Do you understand that I don't have to go along with what anybody says?
[Kasten]: Yes, Your Honor.
¶6 The court accepted the plea questionnaire and waiver of rights form that Kasten had executed with the assistance of defense counsel. Immediately above his signature, the plea questionnaire states: "I am asking the court to accept my plea and find me guilty."
¶7 In response to the court's questions, Kasten replied that he reviewed the document with his attorney's assistance, who discussed with him the elements of the charge and the rights Kasten would be waiving, including the right to a jury trial and the right to make the State prove his guilt. Defense counsel told the court that he had also discussed potential defenses. Upon further questioning, Kasten responded that he was eighteen years old, graduated from high school, had not been treated for any mental problems, and had no questions. The court found that Kasten knowingly, freely, and understandingly waived his constitutional rights. It found him guilty based on facts in the complaint and ordered a presentence investigation.
¶8 At the sentencing hearing, the court reviewed the presentence report and noted that it had "some of his psychiatric records from when he was younger, and now." The court observed that Kasten had been diagnosed with some emotional problems and had some special education. He also had been in a group home and had adjustment difficulties there as well as with his own family members. The court considered the seriousness of the offense, Kasten's record, history of undesirable behavior patterns and rehabilitative needs as described in the presentence report, the protection of the public and punishment. Consistent with the presentence report's recommendation, the court sentenced Kasten to ten years' initial confinement followed by fifteen years' extended supervision.
¶9 Kasten brought a postconviction motion, alleging ineffective assistance of counsel and that defense counsel coerced his no contest plea. In his supporting affidavit, Kasten alleged that defense counsel knew that he had a severe learning disability, "but did not bother to explain what a no contest plea was." He also claimed defense counsel informed him "that he would only get a five year sentence, with one year in prison and four years on supervised release." He stated based on defense counsel's representations, he "entered the no contest plea, even though he had no idea what a no contest plea was." In addition, he faulted counsel for failing to advise him to admit his guilt for purposes of the presentence investigation to avo id a lengthy sentence.
¶10 At the Machner[2] hearing, counsel testified he discussed with Kasten his decision to enter a no contest plea: "We talked about trial. We talked about burden of proof. We talked about right to confront witnesses. ... So we talked about those things before June 17 when the plea questionnaire was discussed." Defense counsel also testified he reviewed the plea questionnaire with Kasten.[3] Counsel disputed the allegation that he did not ensure Kasten's understanding of the plea procedure. "I'm telling you that we spent time. I discussed it with him. The no contest plea is not something that just suddenly appeared and he thought he could enter that plea and still have a trial. There is just no way I told him that."
¶11 Defense counsel also denied Kasten's claim that he pressured him by telling him if he went to trial, the jury would convict him of first-degree sexual assault. Counsel denied he coerced Kasten's plea:
That is the last thing that an attorney should ever do, and it is the last thing that I would ever even think of doing. I have gone to trial many, many times over the course of almost 35 years, both civil and criminal; and to say that I coerced somebody into entering a pleaIt's ludicrous. It's an insult ....
¶12 Counsel further testified that he was aware that Kasten had been diagnosed with an attention deficit hyperactivity disorder at ten years of age, and was also aware that Kasten had graduated from high school and held a number of jobs. Defense counsel testified: "He was able to understand what was going on. I don't think that was ever a question. I know it has been raised now, but it has no bearing." Defense counsel stated that there was no basis for entering a plea of not guilty based upon mental disease or defect.
¶13 In response to the question whether he had ever represented what Kasten's sentence would be, defense counsel stated: "Absolutely not." Defense counsel testified that he had discussed the maximum penalty, along with the State's recommendation that was placed on the record at the plea hearing, and
What I discussed with [Kasten] was that regardless of what the agent recommended and what [the prosecutor was] going to recommend, under the circumstances, I thought that the best case scenario that we had would be for The Court to withhold sentence, or impose and stay, place him on probation, and as a condition of probation subject him to the maximum a year in the county jail, .... And I said that would be probably the best thing we could hope for under the circumstances, which I thought was realistic. ... [B]ut it was never a promise. ... I tell every client I represent I don't wear the robe. The Judge is not bound by what counsel recommends whether it's the prosecution or the defense. So to say that I told him that that is what he would get is as I said before relative to coercion, ludicrous and an insult.
¶14 Counsel also testified that he discussed the specifics of a no contest plea with Kasten, advising him "that the essence of the no-contest plea is that you're neither admitting but you're also not denying what occurred. And based on that plea, The Court will, if there are sufficient facts to support it, find you guilty of the offense." Counsel stated he advised that the decision was Kasten's to make and Kasten took some time to decide.
¶15 Counsel also discussed with Kasten "what the consequences were relative to [the criminal conviction] not being able to be used in a civil litigation as a result of the no contest plea. ... He indicated he understood." With respect to advising Kasten for purposes of the presentence investigation, counsel testified further, "[t]he first thing I tell a client is you must show remorse for what happened regardless of whether or not you feel it. ... So that is one of the first things I told him."
¶16 Kasten did not testify at the postconviction hearing. Kasten's grandparents, who had accompanied Kasten on some of his visits with his attorney and accompanied him to court, disputed defense counsel's testimony. His grandmother testified to the effect that defense counsel spoke to Kasten about his plea for only ten minutes in the back of the courtroom on the day of the plea hearing, and rushed and pressured him to "make up your mind now ...." She testified that defense counsel pointed out that the victim was a believable witness.
¶17 Kasten's grandfather testified that although defense counsel stated, "It's totally up to the Judge what you're going to get, of course[,]" counsel gave the impression that Kasten would receive five years' probation with one year incarceration. The grandfather testified that he believed that Kasten did not understand the plea proceedings, that he had attended special education classes and was not "the sharpest knife in the drawer."
¶18 The circuit court reviewed the conflicting testimony and pointed out that the presentence report included "all of the diagnoses" during Kasten's high school years and had medical and psychological reports attached. The court found that although the grandparents testified that they felt rushed, Kasten had time to discuss the plea procedure with his attorney, made a reasonable decision and took the plea bargain.
¶19 The court also found: "It's clear to me that [Kasten] knew exactly what this plea bargain was about. ... It's obvious to me that [Kasten] has a problem with his temper and his conduct, but I do not believe any of this rises to the level of a defense in this case." The court ruled:
And nothing to indicate that ... he did not understand, or was not able to ... understand the proceedings, and was unable to cooperate with counsel. ... I'm satisfied he knew what the plea bargain was, what the effect of his no contest plea was, that counsel did adequately represent the defendant, did his job.
Finding no basis for relief, the court denied Kasten's ineffective assistance of counsel claim.
¶20 To establish ineffective assistance, Kasten must show that defense counsel's performance was not within the range of competence demanded by attorneys in criminal cases and that the deficient performance was prejudicial in that it adversely affected the outcome of the case. See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).
¶21 Ineffective assistance of counsel presents mixed questions of fact and law. State v. Pitsch, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). Findings of fact are upheld unless clearly erroneous, see WIS. STAT. § 805.17(2), and whether counsel's deficient performance was prejudicial is a question of law to be reviewed de novo. Pitsch, 124 Wis. 2d at 634.
¶22 Kasten argues defense counsel was ineffective for failing to ensure he understood the nature and consequences of his no contest plea. We disagree. While Kasten claims he suffers from psychological disorders and meager intelligence and, therefore, did not understand that his no contest plea was an admission of guilt, this argument lacks record citation and we may reject it on that ground alone. See Tam v. Luk, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990); see also WIS. STAT. RULE 809.19(1)(e).
¶23 In any event, the record fails to support his contention. The presentence investigation revealed Kasten's participation in special education and emotional problems. Kasten's affidavit states without elaboration that he was diagnosed with learning disabilities, attention deficit hyperactivity disorder, as well as an emotional disturbance. These facts do not, however, demonstrate Kasten was unable to understand the nature of his plea or that his impairments amounted to a defense.
¶24 In any event, to the extent Kasten contends defense counsel was deficient for failing to seek psychological evidence, Kasten fails to indicate what such reports would yield. There is no showing that such an evaluation would have revealed any inability to understand the proceedings or any potential defense based on his impairments. Kasten's claim that trial counsel's failure to obtain psychological evaluation was deficient and prejudicial lacks record support.
¶25 Further, defense counsel testified that he had no indication that Kasten was unable to understand the proceedings. Counsel testified at length as to his discussions with Kasten in which he explained the nature and effect of a no contest plea. The plea colloquy is consistent with counsel's testimony. Kasten replied "no" when the court inquired whether he had ever been treated for any mental problems. In addition, based on defense counsel's testimony, the trial court was entitled to find that counsel did not coerce Kasten's plea by misrepresenting the court's sentencing discretion. The court was also entitled to believe counsel's testimony that he advised Kasten to express remorse to the presentence investigator.
¶26 It is apparent the trial court believed defense counsel's testimony and rejected Kasten's grandparents' testimony to the extent that it contradicted the testimony of defense counsel. See Schneller v. St. Mary's Hosp., 162 Wis. 2d 296, 311-12, 470 N.W.2d 873 (1991) (implicit findings may support the judgment). It is not our function to review questions as to weight of testimony and credibility of witnesses. Estate v. Dejmal, 95 Wis. 2d 141, 151, 289 N.W.2d 813 (1980). Such deference to the trial court's determination of the credibility of witnesses is justified because of the trial court's opportunity to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony. Id. at 151-52. Thus, the trial judge, when acting as the factfinder, is considered the "ultimate arbiter" of witness credibility. Id. Evidence is incredible as a matter of law only if it is in conflict with established or conceded facts. See Haskins v. State, 97 Wis. 2d 408, 425, 294 N.W.2d 25 (1980).
¶27 The record supports the trial court's determination that Kasten understood the nature and consequences of his plea and he failed to show deficient performance by defense counsel. Because Kasten has not shown that the trial court's findings are clearly erroneous, we reject his arguments.
By the Court.Judgment and order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).
[3] Counsel stated: "We went through it. We went through the part where it tells about maximum penalties ... all of those portions specifically."