**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 29, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2332-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CF512

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

SANDRA J. BLANCHARD,

    DEFENDANT-APPELLANT.

APPEAL from judgments and an order of the circuit court for Wood County: TODD P. WOLF, Judge. *Reversed and remanded for further proceedings.*

Before Blanchard, Graham, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Sandra Blanchard appeals from judgments of conviction for possession of methamphetamine in violation of WIS. STAT. § 961.41(3g)(g) (2023-24)[1] and possession of drug paraphernalia in violation of WIS. STAT. § 961.573(1), relating to the circuit court's denial of her pretrial motion to suppress evidence.[2]  Blanchard also appeals the court's order denying her postconviction motion for reconsideration of the court's suppression decision. For the reasons set forth below, we reverse the judgments of conviction for possession of methamphetamine and for possession of drug paraphernalia and the order denying the postconviction reconsideration motion, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2     The relevant facts are undisputed and derived from testimony taken at the suppression hearing and the jury trial.  *See* ***State v. Gaines***, 197 Wis. 2d 102, 106 n.1, 539 N.W.2d 723 (Ct. App. 1995) ("When reviewing a suppression order, an appellate court is not limited to examination of the suppression hearing record. It may also examine the trial evidence[.]" (citations omitted)).

¶3     On October 8, 2022, A.B. reported to Wood County Sheriff's Deputy Kristine Beathard that Blanchard had stolen A.B.'s black 2004 Dodge

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] In the Notice of Appeal, Blanchard states that she is appealing the judgments of conviction that resulted in a three-year probationary term and a thirty-day jail sentence.  The judgments which correspond to these dispositions respectively are the possession of methamphetamine conviction and the possession of drug paraphernalia conviction.  There is no reference in the Notice of Appeal or in Blanchard's appellate materials that she is appealing the judgment of conviction for theft, for which she received a withheld sentence and a two-year probationary term.  Therefore, we infer that the judgments being appealed are only the possession of methamphetamine conviction and the possession of drug paraphernalia conviction.

Ram pickup truck from his residence in Pittsville.[3]  Video surveillance footage from A.B.'s residence was provided to Beathard and depicted Blanchard and "other individuals" entering A.B.'s truck and driving it from his residence.

¶4    During the investigation, Beathard learned that Blanchard was staying with C.D. at C.D.'s house.  Beathard, along with another deputy, went to C.D.'s house.  Beathard observed a truck parked in the driveway of C.D.'s house that matched A.B.'s description of his missing truck.  Beathard knocked on the front door of the house and C.D. answered the door.  Beathard asked if Blanchard was in the house.  He initially replied that Blanchard was present, but then said that he did not know and that he was not sure who was in his house.  C.D. appeared to be under the influence of some type of substance.

¶5    C.D. gave the deputies permission to enter his house.  C.D. remained with the second deputy in what appeared to be a parlor room, while Beathard moved from the entryway into the house to look for Blanchard.  Beathard came upon a woman she believed to be Blanchard behind a wood-counter bar in another room, which we refer to as "the barroom."  Beathard also observed a glass smoking pipe, a mirror, and razor blades on the bar countertop.  Beathard could not see Blanchard's hands, which appeared to be moving below the bar's surface, and she was unsure if Blanchard had an object that could be used as a weapon. Beathard told Blanchard to show her hands and to step out from behind the bar. Blanchard immediately complied and approached Beathard with her hands raised. Because Beathard did not know whether there was anything that could be used as

---

[3] Consistent with the policy of protecting victim privacy under WIS. STAT. RULE 809.86(4), we use initials that do not correspond to the victim's and the witness's names.

3

a weapon behind the bar, Beathard escorted Blanchard to the parlor room to remain with the second deputy and returned to the barroom to investigate the surroundings.

¶6      Once back in the barroom, Beathard observed a brown leather purse and multiple cell phones on a stool near the bar. Beathard noticed a clear plastic baggie protruding from the opening of the purse, which she suspected could contain drugs. Beathard began to search the purse. The clear plastic baggie was empty. Inside the purse, Beathard located a wallet containing various cards and identification for Blanchard, and a second wallet containing a library card for A.B. She also saw a small "gem baggie" containing a white crystal-like substance fall from the purse. Beathard believed that the white crystal-like substance was methamphetamine, which tests later confirmed. After Beathard completed her search of the barroom and asked C.D. some follow-up questions, Beathard formally placed Blanchard under arrest for possession of methamphetamine (the material that was in the baggie that fell out of the purse) and possession of drug paraphernalia.

¶7      The State charged Blanchard with possession of methamphetamine, possession of drug paraphernalia, and misdemeanor theft of the missing truck.

¶8      Shortly before trial, Blanchard moved to suppress the evidence obtained from her purse, arguing that the warrantless search of the purse constituted an unreasonable violation of her constitutional rights under the Fourth Amendment of the U.S. Constitution and Article I, Section 11 of the Wisconsin Constitution. The State responded that the search was reasonable because Beathard had probable cause to believe that drug paraphernalia was in the purse and that exigent circumstances justified the search. The circuit court conducted an

evidentiary hearing on the motion on the morning of trial and Beathard was the sole witness. The court denied the motion, concluding that Beathard had probable cause to search the purse and that officer safety justified the warrantless search.

¶9 Blanchard was convicted on all charges at trial. Postconviction, Blanchard brought a motion for reconsideration of the circuit court's suppression decision, which was denied by the court. Blanchard appeals.

**GOVERNING PRINCIPLES AND STANDARD OF REVIEW**

¶10 The Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Wisconsin Constitution guarantee the right of persons to be secure from unreasonable government searches and seizures.[4] *State v. Tullberg*, 2014 WI 134, ¶29, 359 Wis. 2d 421, 857 N.W.2d 120. Our supreme court has generally interpreted the protections against unreasonable searches and seizures afforded by the state constitution coextensively with the protections afforded by the federal constitution. *State v. Denk*, 2008 WI 130, ¶35, 315 Wis. 2d 5, 18-19, 758 N.W.2d 775 (citations omitted). "The touchstone of the Fourth Amendment is

---

[4] The Fourth Amendment to the U.S. Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

reasonableness." **Tullberg**, 359 Wis. 2d 421, ¶29 (citation omitted). Warrantless searches are presumptively unreasonable. **Id.**, ¶30. Nevertheless, a warrantless search may comport with constitutional requirements if the search falls within a specific, well-delineated exception to the warrant rule. **Katz v. United States**, 389 U.S. 347, 357 (1967). Because "the general requirement that a search warrant be obtained is not lightly to be dispensed with … 'the burden is on those seeking (an) exemption (from the requirement) to show the need for it[.]'" **Chimel v. California**, 395 U.S. 752, 762 (1969) (citation omitted).

¶11 When an unlawful search has been conducted, a common judicial remedy is the exclusion of the evidence obtained as a result, referred to as the exclusionary rule. **State v. Dearborn**, 2010 WI 84, ¶15, 327 Wis. 2d 252, 786 N.W.2d 97. The exclusionary rule applies as a remedy to deter police misconduct. **Id.**, ¶38.

¶12 The review of a circuit court order denying a motion to suppress evidence raises a question of constitutional fact requiring a two-step inquiry. **Tullberg**, 359 Wis. 2d 421, ¶27. First, we will uphold the court's findings of historical fact unless they are clearly erroneous. **State v. Meisenhelder**, 2022 WI App 37, ¶7, 404 Wis. 2d 75, 978 N.W.2d 551. "Second, we independently apply constitutional principles to those facts." **Id.**

## DISCUSSION

¶13 On appeal, Blanchard argues that the circuit court erred in its denial of her suppression motion to exclude evidence from the warrantless search of her purse. The State argues that, in addition to the existence of exigent circumstances, the warrantless search of Blanchard's purse was lawful on two alternative

grounds: as a search incident to a lawful arrest and as a protective weapons search during a brief investigatory detention.

¶14    We conclude that none of these exceptions are applicable here, and that the circuit court erred as a matter of law in denying Blanchard's motion to suppress and her postconviction reconsideration motion. Accordingly, we reverse the judgments of conviction for possession of methamphetamine and possession of drug paraphernalia and the order denying Blanchard's postconviction reconsideration motion.

¶15    Because the circuit court denied Blanchard's motion to suppress based on its determination that exigent circumstances existed, we address this exception first, and we then consider whether the search was lawful under the alternative warrant exceptions that the State advances on appeal.[5]

### I. Exigent Circumstances

¶16    The State has the burden to prove by clear and convincing evidence that exigent circumstances justified the search of Blanchard's purse. *State v. Hay*, 2020 WI App 35, ¶11, 392 Wis. 2d 845, 946 N.W.2d 190. The analysis requires a two-part inquiry: (1) whether there was probable cause that the item to be searched contained evidence of a crime; and (2) whether exigent circumstances existed at the time of the search to justify not obtaining a warrant. *State v. Garrett*, 2001 WI App 240, ¶9, 248 Wis. 2d 61, 635 N.W.2d 615. Blanchard concedes that there was probable cause to believe that the purse contained evidence of a crime. Thus,

---

[5] We will address the two other search warrant exceptions the State raises on appeal in the text because "we may affirm on different grounds than those relied on by the trial court." *State v. Earl*, 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755 (citations omitted).

our inquiry focuses solely on whether exigent circumstances justified the warrantless search under the undisputed facts.

¶17 Our supreme court has recognized four established exigent circumstances that justify a warrantless search: "(1) an arrest made in 'hot pursuit'; (2) a threat to the safety of a suspect or others; (3) a risk that evidence will be destroyed[;] and (4) a likelihood that the suspect will flee or escape." *Id.*, ¶11 (citation omitted). Whether a set of facts constitutes exigent circumstances is an objective test considering whether the officer, under the totality of the circumstances, would reasonably believe that a delay to procure a warrant would "gravely endanger life, risk destruction of evidence, or greatly enhance the likelihood of the suspect's escape." *Id.* (citation omitted).

¶18 For example, in *Hughes*, our supreme court determined that exigent circumstances existed for officers' warrantless entry into an apartment from which a strong odor of marijuana emanated when an occupant unexpectedly opened the apartment door, discovered the officers waiting outside, and "[t]here was initial chaos in the apartment" as seven or eight individuals began to flee. *State v. Hughes*, 2000 WI 24, ¶¶1, 5-6, 233 Wis. 2d 280, 607 N.W.2d 621. Because the officers feared the individuals inside the apartment would intentionally destroy evidence before a warrant could be obtained, our supreme court determined that it was reasonable for the officers to enter the apartment at that moment without a warrant. *Id.*, ¶¶5, 26. A "'now or never' moment" is "the epitome of an exigent circumstance." *Tullberg*, 359 Wis. 2d 421, ¶50.

¶19 We conclude that a now or never moment did not exist under the undisputed facts here and therefore the State did not meet its burden of proving the existence of exigent circumstances to justify the warrantless search of the purse.

Specifically, the State did not prove by clear and convincing evidence that an officer in the position of Beathard would reasonably believe that a delay to procure a warrant to search the purse was not feasible because of hot pursuit, or that such a delay would have gravely endangered anyone's life, risked the destruction of evidence, or greatly enhanced the likelihood that Blanchard or C.D. would flee the premises.

¶20    There was no testimony to indicate that the deputies' arrival at, or entrance into, C.D.'s house caused any type of complication, chaos, or urgent need for action. *See Hay*, 392 Wis. 2d 845, ¶19 (concluding no exigent circumstances existed because the case was "marked by the lack of complication and absence of chaos"). The deputies were not in hot pursuit of a suspect. Rather, as noted, they arrived at C.D.'s house after receiving information in the course of investigating A.B.'s missing truck that Blanchard was staying there, and Beathard identified what she believed to be the stolen truck in C.D.'s driveway. Unlike the apartment occupants in *Hughes*, C.D. allowed the deputies to enter and look around his residence. At no point before the search of the purse did C.D. or Blanchard fail to comply with any request or direction from the deputies or attempt to leave the scene. In fact, Beathard testified that Blanchard complied "right away" with Beathard's orders to emerge from behind the bar with her hands up and visible to Beathard. Although there were razor blades on the bar counter, Beathard never saw Blanchard touch them. Nor did Beathard testify that she saw Blanchard touch the purse, which was on the seat of a stool in close proximity to the bar. Once Blanchard emerged from behind the bar, there was no evidence that Beathard anticipated or expected that Blanchard might possess or otherwise have immediate access to an object that could be used as a weapon.

¶21 After Beathard escorted Blanchard to the parlor room where Blanchard remained with C.D. and the second deputy, neither Beathard nor the second deputy took additional safety precautions to secure the premises or search for other individuals. There is also no testimony that could have supported a finding that Beathard reasonably feared that evidence would be destroyed absent an immediate warrantless search of the purse.[6]

¶22 The State argues that there were exigent circumstances because there was reason to believe the purse might contain a weapon; there was a legitimate risk of evidence being destroyed; and "a confederate of Blanchard might suddenly appear from another room and run off with it." We are not persuaded. There are no record cites in the State's appellate response brief to support these factual assertions. In fact, for the reasons discussed, the totality of uncontested facts does not support these assertions. *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463, (a party must support a fact-based argument with citations to the record), *abrogated on other grounds by Wiley v. M.M.N. Laufer Fam. Ltd. P'ship*, 2011 WI App 158, 338 Wis. 2d 178, 807 N.W.2d 236; *see also Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990) ("we decline to embark on our own search of the record, unguided by references and citations to specific testimony, to look for … evidence to support it").

---

[6] Although Beathard had consent to enter C.D.'s house, she did not have consent to search additional containers, nor did she ask for it. *State v. Sobczak*, 2013 WI 52, ¶84, 347 Wis. 2d 724, 833 N.W.2d 59 (Abrahamson, J., dissenting) ("Authority to consent to search a room does not necessarily extend to authority to consent to search closed containers within that room.").

¶23    In sum on this issue, we conclude that as a matter of law, the State failed to prove by clear and convincing evidence that exigent circumstances existed to justify the warrantless search of Blanchard's purse.

## II. Search Incident to Arrest

¶24    Alternatively, the State argues that Beathard's search of the purse was justified as a search incident to arrest, which is another well-established exception to the warrant requirement because searching an arrested person and the area within their reach is reasonable. *See Meisenhelder*, 404 Wis. 2d 75, ¶¶11-12 (citing *Chimel*, 395 U.S. 752, 762-76); *see also* WIS. STAT. § 968.11.[7]  An arrest generally diminishes the arrested person's privacy interests and these reduced interests generally include those in "closed containers found on an arrestee's person" or items within the arrestee's reach from which the arrestee could gain access to a weapon or conceal or destroy evidence. *Meisenhelder*, 404 Wis. 2d 75, ¶¶12-13; *see Denk*, 315 Wis. 2d 5, ¶41 (recognizing Wisconsin adopted *Chimel*, 395 U.S. 752 (allowing arresting police officers to conduct a contemporaneous, limited search of the arrestee's person and the area immediately

---

[7] WISCONSIN STAT. § 968.11 states:

When a lawful arrest is made, a law enforcement officer may reasonably search the person arrested and an area within such person's immediate presence for the purpose of:

**(1)** Protecting the officer from attack;

**(2)** Preventing the person from escaping;

**(3)** Discovering and seizing the fruits of the crime; or

**(4)** Discovering and seizing any instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, the offense.

surrounding the arrestee at the time of the arrest)). A search incident to arrest must be contemporaneous with an arrest but may occur prior to an arrest if there was probable cause to arrest the individual prior to the search, so long as the probable cause is not based on any fruits of the search, and "formal arrest followed quickly on the heels of the challenged search of the petitioner's person[.]" *State v. Sykes*, 2005 WI 48, ¶¶15-16, 279 Wis. 2d 742, 695 N.W.2d 277 (citations omitted). The existence of probable cause for the arrest prior to the search need not be for the same crime that ultimately served as the basis for the arrest. *Id.*

¶25 However, "[t]he scope of a search incident to arrest is confined to 'the area from within which [the arrestee] might gain possession of a weapon or destructible evidence[.]'" *Id.*, ¶20 (citing *Chimel*, 395 U.S. at 763); *see also United States v. Jackson*, 576 F.2d 749, 753 (8th Cir. 1978) (referring to this area as the suspect's "wing-span"). "We have understood this to mean the area immediately surrounding the arrestee." *Id.* (citing *State v. Murdock*, 155 Wis. 2d 217, 231, 455 N.W.2d 618 (1990), *overruled on other grounds by Dearborn*, 327 Wis. 2d 252, ¶27) Here, assuming without deciding that the deputies had probable cause to arrest Blanchard before Beathard searched the purse, it remains that the purse search occurred in the barroom, separate from the room that Blanchard occupied at the time of the search and her arrest. Under the undisputed facts, the purse was not within Blanchard's immediate vicinity or control at the time of the search or her arrest, and therefore she had no opportunity to access the purse's contents to conceal or destroy evidence, or to access any object that could be used as a weapon and endanger officer safety. Therefore, the State's argument fails.

¶26 The State is mistaken in arguing that the facts in this case are analogous to those in *Sykes*. In *Sykes*, the officer asked the defendant for identification, the defendant directed the officer to his wallet on the floor, and the

officer found cocaine in the wallet. *Sykes*, 279 Wis. 2d 742, ¶9. The defendant in *Sykes* did not argue that the searched item was outside of his immediate area of control at the time of the search, *see id.*, ¶21, but that was the case for Blanchard here.

¶27 In sum on this issue, we conclude that the search of the purse cannot be justified as incident to Blanchard's arrest.

### III. Protective Search During Investigatory Stop

¶28 Alternatively, the State argues that Beathard's search of the purse was justified as a protective search during an investigatory stop because the plain view of drug paraphernalia permitted Beathard to investigate Blanchard and because Beathard reasonably suspected that Blanchard posed a threat of physical harm to the deputies. We reject this argument based on our conclusion that there were not specific articulable facts to support reasonable beliefs by the deputies either that Blanchard was dangerous or that she had immediate access to an object that could be used as a weapon once she was removed from the barroom.

¶29 Investigative or *Terry* stops[8] and searches for the purpose of officer safety are permissible exceptions to the Fourth Amendment. *State v. Limon*, 2008 WI App 77, ¶¶11, 13, 312 Wis. 2d 174, 751 N.W.2d 877; *see* WIS. STAT. § 968.24 (permitting temporary stop and questioning in a public place if officer has reasonable suspicion of a crime), WIS. STAT. § 968.25 (permitting a search for weapons or other instrument capable of causing injury during a stop for temporary questioning). Whether an officer had reasonable suspicion to effectuate a

---

[8] *Terry v. Ohio*, 392 U.S. 1 (1968).

protective search for weapons is analyzed on a case-by-case basis, based on the totality of the circumstances, and requires that the officer have reasonable suspicion "to believe that the person is dangerous and may have immediate access to a weapon." *State v. Johnson*, 2007 WI 32, ¶22, 299 Wis. 2d 675, 729 N.W.2d 182; *State v. Sutton*, 2012 WI App 7, ¶7, 338 Wis. 2d 338, 808 N.W.2d 411. Reasonable suspicion must be based on specific, articulable facts. *Johnson*, 299 Wis. 2d 675, ¶23.

¶30 Assuming without deciding that a *Terry* stop may be conducted inside a private residence, a proposition that Blanchard does not contest, the undisputed facts here do not establish that Beathard had reasonable suspicion that Blanchard was dangerous or had immediate access to a weapon inside the purse to justify a protective search of the purse. Beathard did not indicate that the video surveillance evidence showing the theft of A.B.'s truck depicted Blanchard possessing an object that could be used as a weapon. As discussed, when Beathard entered the barroom, although Beathard observed movements that indicated that Blanchard was moving her hands below the bar's surface, Blanchard immediately complied when Beathard instructed Blanchard to show her hands. When Blanchard showed her hands, she was not holding an object that could be used as a weapon. And while suspicion of drug *dealing* has been associated with the possession of deadly weapons, *Johnson*, 299 Wis. 2d 675, ¶38, to repeat, at the time of the search of the purse, Blanchard was in a different room being supervised by the second deputy and did not have access to the purse or its contents. Therefore, as we have already emphasized above, the purse was not on Blanchard's body, within her reach, nor within her immediate vicinity at the time of the search. Further, the claim that the search of the purse was based on officer safety or protection is undermined by Beathard's own testimony that she did not

address officer safety issues besides searching the purse after escorting Blanchard to the front parlor room, and there is no evidence in the record that the second officer took any additional actions, besides supervising C.D. and Blanchard, to ensure officer safety or protection.

¶31 The State relies on *Limon* to argue that the search of Blanchard's purse was a reasonable protective search. In *Limon*, two police officers conducted an investigatory stop of a group of three people sitting on the porch of a house in a neighborhood where people were known to carry weapons and after police had received a credible, anonymous tip that people were dealing and smoking illegal drugs around the house. *Limon*, 312 Wis. 2d 174, ¶¶3, 6. The porch occupants indicated that none of them resided in the house and the officers observed a "fresh" marijuana blunt on the porch floor. *Id.*, ¶6. The male officers frisked the two male individuals for weapons, and not the female defendant, because of a department policy that only female officers may search women absent exigent circumstances. But one of the male officers searched the defendant's purse, which was then in her possession, found crack cocaine, and arrested her. *Id.*, ¶9. Our supreme court determined that, under the totality of circumstances, the officers had reasonable suspicion that criminal activity may have been afoot and that the investigatory stop was lawful. *Id.*, ¶26. The court also concluded that, under the objective circumstances known to the officers, including the credible, anonymous tip about drug activity, the high crime neighborhood, the admission that the defendant and other occupants did not reside in the house, the observation of drug use, and the size of the defendant's purse that could easily fit a weapon, the protective search of the defendant's purse in her possession was justified because the officers had reasonable suspicion that they were in danger of physical injury. *Id.*, ¶34.

¶32 ***Limon*** is distinguishable on the undisputed facts here in important respects. Here, the facts do not support an objective concern by the deputies that Blanchard posed a physical threat. For example, there is no indication in the record that either deputy patted down Blanchard's person in a search for weapons or other potentially dangerous objects. And as for her potential access to a possible weapon, we reiterate that Blanchard did not have access to the purse at the time of the search, because she was in a different room and entirely separated from the purse. Accordingly, there are no specific and articulable facts to support the proposition that, at the moment of the search, there was a reasonable suspicion that Beathard or another was in danger of physical injury that would have rendered the search of the purse reasonable as a protective search during an investigatory stop.

## CONCLUSION

¶33 Accordingly, we reverse the judgments of conviction for possession of methamphetamine and for possession of drug paraphernalia and the order denying the postconviction reconsideration motion, and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgments and order reversed and remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

16